Roland Johnson and Karen Johnson, Trustees of the
Roland and Karen Johnson Trust, appellees, v.
City of Fremont, Nebraska, a municipal
corporation, appellant.

___ N.W.2d ___

Filed April 18, 2014.    No. S-13-668.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

3. **Special Assessments: Municipal Corporations: Appeal and Error.** The power and authority delegated to municipalities to construct improvements and to levy special assessments for their payment is strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority and the manner of exercise thereof is resolved in favor of the taxpayer.

4. **Statutes: Legislature: Intent.** In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

5. **Statutes: Appeal and Error.** The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

6. ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.

7. ____: ____. When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

8. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

9. ____. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

10. **Summary Judgment.** Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law.

11. **Summary Judgment: Final Orders: Appeal and Error.** Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those

motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.

Appeal from the District Court for Dodge County: Geoffrey C. Hall, Judge. Reversed and remanded with direction.

Paul A. Payne for appellant.

Steven G. Ranum and Martin P. Pelster, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

A city relied upon Nebraska's "gap and extend" law[1] to pave one block of a street and assess the paving costs against abutting property owners. At one end, the new paving adjoined a paved intersection of two paved streets. At the other end, there was no connecting paved street. We must decide whether the paving was authorized under the second sentence of § 18-2001, which permitted the city to "pave any unpaved street . . . which intersects a paved street for a distance of not to exceed one block on either side of such paved street." Because the plain language of the statute authorized the paving, we reverse the judgment of the district court and remand the cause with direction.

## BACKGROUND

The relevant streets are located in the City of Fremont, Nebraska (City). An excerpt from a map in evidence will best illustrate the situation, both before and after the project which is the subject of the instant appeal. We note that the quality of the image, although limited by its source, still provides a useful reference tool.

---

[1] See Neb. Rev. Stat. §§ 18-2001 to 18-2005 (Reissue 2012).

We first identify the extent of previous paving of relevant streets. On the east end of the map, Garden City Road was previously paved. A portion of Donna Street, from the Garden City Road intersection to the Jean Drive intersection, was also already paved. The paved segment of Donna Street ran parallel to a railroad right-of-way (lower right corner). Jean Drive was entirely paved, including both the Garden City Road and Donna Street intersections. On the west end of the map, a portion of Howard Street was previously paved, but this paving ended well north of the intersection of Howard and Donna Streets.



Again referring to the map, the contested segment of paving on Donna Street (which we have marked with X's) extended one block west from the intersection of Donna Street and Jean Drive. Thus, the east end of the segment connected to the paved intersection of Donna Street and Jean Drive. On the west end, the new pavement ended where it reached the unpaved intersection with Howard Street. Thus, at the

west end, the newly paved segment does not connect to any other paving.

Roland Johnson and Karen Johnson, trustees of the Roland and Karen Johnson Trust (trustees), who initiated the lawsuit now before us, are the legal titleholders of real estate in the City. Their property abuts upon and is adjacent to Donna Street.

In August 2009, the mayor and city council of the City passed a resolution creating "Improvement Unit No. 97." The resolution stated that under the authority granted in §§ 18-2001 to 18-2003, the City would pave a portion of Donna Street beginning at the west margin of Jean Drive. The resolution stated that Donna Street was an unpaved street and that it intersected a paved street. The City subsequently passed a resolution which levied a special tax and assessment upon certain parcels of real estate—including the trustees' property—to pay the costs of Improvement Unit No. 97.

The trustees filed a petition on appeal, alleging that the levy of special assessments was invalid. They claimed that the street improvement in Improvement Unit No. 97 did not fill an unpaved gap between paved streets, but, rather, merely extended the paving on Donna Street. The trustees requested an order vacating the special assessments levied upon the property and a refund of the special assessment they had paid. In the City's answer, it stated that Donna Street intersects with South Howard Street one block west of Jean Drive. The City admitted that Improvement Unit No. 97 extended the paving on Donna Street and claimed such action was authorized under the unambiguous language of § 18-2001.

Upon the parties' cross-motions for summary judgment, the district court sustained the trustees' motion and overruled the City's motion. The court observed that the parties argued different interpretations of the same factual scenario. The court stated that it found *Turner v. City of North Platte*[2] to be compelling, and the court then quoted the following language that can be found in *Iverson v. City of North Platte*[3]: "It is clear

---

[2] *Turner v. City of North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979).

[3] *Iverson v. City of North Platte*, 243 Neb. 506, 514, 500 N.W.2d 574, 579 (1993).

that the Legislature intended that the gap and extend procedure be used only to fill one- or two-block unpaved gaps which exist between paved streets." The court stated that Donna Street extended in the direction of an unpaved area and did not connect with or fill a gap with a paved intersection. Thus, the court concluded that the City did not "comport with the limitations and restrictions required by the gap and extend law." The court ordered the City to refund to the trustees the assessment payments they had made.

The City timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[4]

## ASSIGNMENTS OF ERROR

The City assigns that the district court erred in (1) sustaining the trustees' motion for summary judgment, (2) finding the City exceeded the limitations imposed by §§ 18-2001 to 18-2003, (3) finding the assessments against the trustees' properties arising from Improvement Unit No. 97 were invalid, (4) failing to properly define the statutory scheme and interpret the law and statutes, and (5) using a point not necessary to be passed on in *Iverson v. City of North Platte*[5] as authority in this case.

## STANDARD OF REVIEW

[1] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[6]

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[7]

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[5] *Iverson, supra* note 3.

[6] *Harris v. O'Connor, ante* p. 182, 842 N.W.2d 50 (2014).

[7] *Hess v. State, ante* p. 559, 843 N.W.2d 648 (2014).

## ANALYSIS

[3] At the outset, we recall that the power and authority delegated to municipalities to construct improvements and to levy special assessments for their payment is strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority and the manner of exercise thereof is resolved in favor of the taxpayer.[8]

The crux of this appeal is whether the City exceeded its authority under Nebraska's gap and extend law.[9] Section 18-2001 provides in part:

> Any city or village may, without petition or creating a street improvement district, . . . pave any portion of a street otherwise paved so as to make one continuous paved street, but the portion to be so improved shall not exceed two blocks, including intersections, or thirteen hundred and twenty-five feet, whichever is the lesser. Such city or village may also . . . pave any unpaved street or alley which intersects a paved street for a distance of not to exceed one block on either side of such paved street. The improvements authorized by this section may be performed upon any portion of a street or any unpaved street or alley not previously improved to meet or exceed the minimum standards for pavement set by the city or village for its paved streets.

The City concedes that the first sentence of § 18-2001 did not empower it to make the improvement, but contends that the second sentence provided independent authority to do so. It argues that under the second sentence, it had the authority to create a paving district which extends a street for up to one block from an intersecting paved street. According to the City, "this is the paving of an extension of Donna Street for one block from where it intersects Jean Drive, a paved street."[10]

The trustees argue that a more narrow interpretation of § 18-2001 is warranted and that "[t]he text of the statute, its

---

[8] *Iverson, supra* note 3.

[9] See §§ 18-2001 to 18-2005.

[10] Brief for appellant at 10.

legislative history, and the case law interpreting § 18-2001 limit a city's authority under § 18-2001 to instances where a city paves a one or two block unpaved gap between paved streets."[11] The trustees state that "[a]t the very least, an ambiguity exists in the statute as to whether the phrase 'so as to make one continuous paved street' applies to limit both the first and second sentence in § 18-2001, or just the first sentence."[12] We disagree.

[4] First, we determined long ago that the provisions of the gap and extend law are clear and unambiguous.[13] In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[14] Because we have determined that provisions of the gap and extend law are clear and unambiguous, they are not open to construction. Thus, we need not inquire into the statute's legislative history.

Second, the ordinary principles governing statutory interpretation lead to the same conclusion in the case before us. Several principles apply, and we discuss each in turn.

[5-7] The plain language of the statute's second sentence clearly applies to the City's extension of Donna Street. The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[15] In other words, absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.[16] And when construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would

---

[11] Brief for appellees at 4.

[12] *Id.* at 6-7.

[13] *Gaughen v. Sloup*, 197 Neb. 762, 250 N.W.2d 915 (1977).

[14] *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[15] *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013).

[16] *Hess, supra* note 7.

defeat it.[17] Plainly, the first two sentences of § 18-2001 provide separate but complementary powers to the City. The first sentence provides the power to fill a "gap," that is, an unpaved area between two paved areas. The second sentence, on the other hand, empowers a city to make a single-block extension of paving from an intersecting street. The Legislature used the word "also" to make it clear that the second sentence provided an additional power beyond that granted by the first sentence. Thus, the second sentence provides a very limited power to "extend" paving without a property owner's consent. The complementary powers of the gap and extend law are plainly evident from the words of the statute. Donna Street intersected Jean Drive, a paved street. Thus, the statute allowed the City to pave Donna Street for one block from that intersection. And that is precisely what the City did.

[8,9] The trustees' interpretation would effectively eliminate the second sentence of § 18-2001. It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[18] Thus, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[19] The trustees have not identified any additional power that would be conferred by the second sentence under their interpretation. Thus, their interpretation would render the second sentence superfluous or meaningless. For that reason, we must reject their interpretation.

The district court's reliance on *Iverson*, as urged by the trustees, was misplaced. The court's order quotes the following language that can be found in *Iverson*: "It is clear that the Legislature intended that the gap and extend procedure be used only to fill one- or two-block unpaved gaps which exist between paved streets."[20] But the situation presented

---

[17] *Id*.

[18] *State v. Medina-Liborio*, 285 Neb. 626, 829 N.W.2d 96 (2013).

[19] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

[20] *Iverson, supra* note 3, 243 Neb. at 514, 500 N.W.2d at 579.

in *Iverson* was entirely different. There, the municipality, using a "gap-stacking strategy," attempted to circumvent the necessity of creating a paving district, which would require consent of the landowners prior to its initiation.[21] Moreover, the *Iverson* court recognized that two related paving districts, not affected by the *Iverson* decision, had been "created under the provision of § 18-2001 which allows a city to pave any unpaved streets which intersect a paved street for a distance of one block on either side of such paved street."[22] In each instance, one block of an unpaved street perpendicular to an intersecting paved street was paved under the same language of § 18-2001 upon which the City relies. Although the *Iverson* court resorted to legislative history, it did so in the context of an attempt to stack a two-block gap district to further extend a properly enacted one-block gap district. To the extent that *Iverson* speaks to the situation before us, it supports the City's position.

[10,11] The district court correctly recognized that there was no genuine issue of material fact, but because of its erroneous statutory interpretation, the court granted summary judgment to the wrong party. Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law.[23] Both parties moved for summary judgment. The court should have sustained the City's motion but instead sustained the trustees' motion. Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as

---

[21] *Id.*

[22] *Id.* at 512, 500 N.W.2d at 578.

[23] *McLaughlin Freight Lines v. Gentrup*, 281 Neb. 725, 798 N.W.2d 386 (2011).

it deems just.[24] Because there is no issue of fact and the City is entitled to judgment as a matter of law, we determine the controversy accordingly.

## CONCLUSION

We conclude that the improvement unit mandating the paving of one block of Donna Street, which intersected Jean Drive, was plainly authorized by the second sentence of § 18-2001. We reverse the judgment of the district court and remand the cause with direction to enter judgment in favor of the City.

REVERSED AND REMANDED WITH DIRECTION.

---

[24] *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012).

---

JEFF HALL, APPELLEE AND CROSS-APPELLEE, V. COUNTY
OF LANCASTER, APPELLANT AND CROSS-APPELLEE,
AND NORRIS SCHOOL DISTRICT NO. 160,
APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed April 18, 2014.    No. S-13-724.

1. **Tort Claims Act.** Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the State Tort Claims Act is a question of law.
2. **Political Subdivisions Tort Claims Act: Tort Claims Act.** The Political Subdivisions Tort Claims Act includes a discretionary function exception similar to that contained in the State Tort Claims Act, and thus, cases construing the State Tort Claims Act exception are equally applicable to the discretionary function exception in the Political Subdivisions Tort Claims Act.
3. **Political Subdivisions Tort Claims Act**: **Appeal and Error.** An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act independent from the conclusion reached by the trial court.
4. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity which are subject to statutory exceptions.
5. **Pretrial Procedure: Parties.** A pretrial order is binding upon the parties.
6. **Pretrial Procedure: Pleadings.** The issues set out in a pretrial order supplant those raised in the pleadings.