753 N.W.2d 778 (2008)
276 Neb. 206
Jennie L. YOUNG and Thomas J. Young, Wife and Husband, Appellees,
v.
MIDWEST FAMILY MUTUAL INSURANCE COMPANY, Appellant.
No. S-07-364.
Supreme Court of Nebraska.
July 25, 2008.
*779 William E. Gast and Gene M. Eckel, of Gast & McClellan, Omaha, for appellant.
*780 Thomas J. Young, Omaha, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
STEPHAN, J.
This case, before us for the second time, arose from a disputed insurance claim by homeowners Jennie L. Young and Thomas J. Young. In Young v. Midwest Fam. Mut. Ins. Co.,[1] we held that settlement offers made by Midwest Family Mutual Insurance Company (Midwest) were not equivalent to offers to allow judgment and thus did not preclude an award of attorney fees to the Youngs under Neb. Rev.Stat. § 44-359 (Reissue 2004). On remand, the district court awarded the Youngs attorney fees and costs, and Midwest has appealed the award. The principal question before us in this appeal is whether an attorney who successfully represents himself in an action on an insurance policy is entitled to fees under § 44-359.

BACKGROUND
We incorporate the following summary of pertinent facts and procedural history from our prior opinion:
Midwest issued a homeowner's insurance policy to the Youngs. In April 2001, the Youngs' home sustained hail damage. Although the parties differed greatly as to the damage, Midwest estimated damages of $790 and issued a check to the Youngs for $561.02 ($790 less a deductible). The Youngs, however, claimed damages of $27,500.
After the Youngs sued Midwest for breach of contract, Midwest sent the Youngs several letters offering to settle the dispute. The first offer was termed as "an offer of $22,000 in full settlement of this claim"; the second was a "settlement offer in the amount of $2,000.00, in consideration for a complete and final release"; the third was "an offer in the amount of $3,000, in lieu of going back to trial"; and the fourth was a "final offer of settlement to [the Youngs] in the amount of $9,000." The Youngs refused all of the settlement offers, and the case proceeded to trial. A jury returned a $940 verdict for the Youngs.
The Youngs moved for attorney fees under § 44-359. The district court denied their request stating that [Neb.Rev. Stat.] § 25-901 [(Reissue 1995)] precluded an award of attorney fees because the Youngs failed to obtain a judgment for more than the offers made by Midwest.[2]
The Youngs appealed, and we held that Midwest's settlement offers were not equivalent to offers to allow judgment and thus did not preclude an award of attorney fees to the Youngs. We reversed, and remanded for further proceedings.
On remand, the Youngs submitted billing records for three individuals: Matthew L. McBride, Thomas, and Jennie. McBride served as the Youngs' attorney until May 12, 2004. His billing records included fees in the amount of $20,484, representing 170.7 hours billed at $120 per hour. Thomas, an attorney licensed to practice law in Nebraska, took over the Youngs' case after McBride withdrew, although Thomas apparently performed some legal services on the case while still represented by McBride. Thomas' billing records for the period of October 18, 2001, through November 15, 2004, totaled $19,845, representing 113.4 hours billed at *781 $175 per hour. Jennie, a "freelance paralegal," submitted billing records in the amount of $1,504 representing 37.6 hours billed at $40 per hour. The Youngs also submitted two exhibits itemizing "taxable" and "non taxable" costs, which totaled $2,518.55 and $5,123.17, respectively.
The district court determined that the Youngs were entitled to an award of taxable costs in the amount of $2,518.55, nontaxable costs in the amount of $5,123.17, and "a reasonable attorneys fee in the sum of $25,000." The order did not specify how this amount was determined.
Midwest perfected a timely appeal, which we moved to our docket on our own motion.

ASSIGNMENTS OF ERROR
Midwest assigns, restated, that the district court erred in awarding (1) any attorney fees or paralegal fees for pro se legal services performed by the Youngs on their own behalf, (2) more than a nominal amount of attorney fees for services performed by McBride prior to his withdrawal from the case, and (3) costs.

STANDARD OF REVIEW
[1, 2] A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion.[3] When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[4]
[3, 4] Statutory interpretation presents a question of law.[5] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[6]

ANALYSIS

YOUNGS' ATTORNEY AND PARALEGAL FEES
The $25,000 attorney fee award in this case does not include an itemization of the amounts attributable to the efforts of McBride and the Youngs. However, inasmuch as the award exceeds the total amount reflected on billing statements which McBride submitted to the Youngs, we conclude that a portion of the award must be attributable to the attorney and paralegal fees submitted by the Youngs for time spent working on their own case.
[6, 7] As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[7] Section 44-359 is a fee-shifting statute which permits a successful litigant to recover attorney fees as a part of the judgment in certain actions against insurance companies. The statute provides in pertinent part:
In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy... the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable *782 sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.[8]
In Dale Electronics, Inc. v. Federal Ins. Co.,[9] we held that under § 44-359, "a successful litigant is entitled to receive a reasonable attorney's fee for in-house counsel actually engaged in the preparation and trial of the litigation to the same extent as outside counsel." However, we have not previously decided whether § 44-359 permits the recovery of an attorney fee by a pro se plaintiff who is a licensed attorney.
The U.S. Supreme Court addressed a similar issue in Kay v. Ehrler,[10] decided in 1991. Richard Kay, an attorney, successfully represented himself in a civil rights action challenging Kentucky's election statutes. He sought attorney fees under a federal statute[11] which permitted an award of an attorney fee to the prevailing party in federal civil rights litigation. Noting that pro se litigants who were not lawyers were not entitled to recover fees, the Supreme Court framed the issue as "whether a lawyer who represents himself should be treated like other pro se litigants or like a client who has had the benefit of the advice and advocacy of an independent attorney."[12] The Court resolved the issue in the negative based upon three principles. First, as a textual matter, the Court concluded that the term "attorney" assumed an agency relationship and that "it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award" of attorney fees.[13] Second, the Court observed that the purpose of fee-shifting statutes was "to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights."[14] Third, the Court noted that a rule which awards fees only to those litigants who have retained independent counsel ensures "the effective prosecution of meritorious claims."[15]
After the Kay decision, federal courts have denied attorney fees to pro se attorneys under a variety of fee-shifting statutes, including the Equal Access to Justice Act, the Freedom of Information Act, and the Individuals with Disabilities Education Act.[16] State courts have generally followed suit.[17] While post-Kay decisions have continued to emphasize the incentive of retaining independent counsel[18] and the *783 agency relationship between an attorney and a client,[19] some have also noted that pro se attorneys do not actually incur fees for which they might be compensated.[20]
We join the courts which have adopted the reasoning of Kay. Allowing a pro se attorney litigant to recover fees while barring nonlawyer litigants from collecting fees would "create disparate treatment of pro se litigants on the basis of their occupations,"[21] and we decline to adopt such rule. We hold that a successful pro se litigant in an action on an insurance policy is not entitled to recover an attorney fee under § 44-359, even if the pro se litigant is a licensed attorney. Accordingly, the fee award in this case was erroneous to the extent that it included the attorney fees claimed by Thomas and the paralegal fees claimed by Jennie.

MCBRIDE FEE
[8, 9] McBride's fees are the proper subject of a fee award under § 44-359, but the issue presented in this appeal goes to the amount of the award. To determine proper and reasonable attorney fees under § 44-359, it is necessary for the court to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[22] There is no presumption of reasonableness placed on the amount offered by the party requesting fees.[23] We examine these factors as they bear upon the reasonableness of McBride's fee.
This was an action on a homeowner's insurance policy to recover for alleged storm damage to a roof, flashing, gutters, skylight, and air-conditioning units. The Youngs originally claimed damages of "approximately $35,000.00." Midwest took the position that its liability under the policy was no more than $561.02. The record reflects that between January 7, 2002, and April 5, 2004, McBride devoted a total of 170.7 hours to the case and billed his time at the rate of $120 per hour for a total of $20,484. But the record does not show that all of this time was devoted to the action on the policy. An attorney fee awarded under the provisions of § 44-359 must be solely and only for services actually rendered in the preparation and trial of the litigation on the policy in question.[24] *784 During some of the time reflected on McBride's billing records, the Youngs were pursuing a second count alleging a claim for damages based upon the tort of bad faith. This claim was not an "action upon any type of insurance policy" within the meaning of § 44-359,[25] and in any event, it was resolved against the Youngs by an order of partial summary judgment. Some of McBride's billing entries refer specifically to the bad faith claim, but the record does not permit any precise determination of what services were devoted solely and specifically to the breach of contract claim.
Although the record does not include specific evidence regarding the skill required to properly conduct the case, we note from the record that this was a contested case involving discovery and utilization of expert witnesses and that it was tried to a jury. The first trial, in which McBride represented the Youngs, ended with a mistrial after the opening statement. The second trial, in which Thomas represented himself and Jennie after McBride had withdrawn, resulted in a verdict in favor of the Youngs in the amount of $940. This was approximately $379 more than Midwest had admitted it was obligated to pay under the policy. The record does not include evidence upon which we can assess the remaining factors applicable to the reasonableness of McBride's fees as reflected on his billing statement, including responsibility assumed, care and diligence exhibited, character and standing of the attorney, and the customary charges of the bar for similar services.
Based upon our review of the record, we conclude that the district court abused its discretion in awarding an attorney fee of $25,000. We conclude that no more than $5,000 can be justified for McBride's services, given the amount at issue, the marginally favorable result obtained, and the uncertainty regarding the amount of McBride's time which was reasonably necessary for the prosecution of the action on the policy, as opposed to the bad faith claim. Accordingly, we modify the attorney fee award by reducing it from $25,000 to $5,000.

COSTS
[10] Under Neb.Rev.Stat. § 25-1708 (Reissue 1995), "costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific real or personal property." The total of $2,518.55 in "taxable costs" awarded to the Youngs included a filing fee, subpoena and service fees, deposition fees, and witness fees. We find no error in the taxation of these court costs.
However, we conclude that the court erred in awarding $5,123.17 in "non taxable costs" to the Youngs. These appear to be expert witness fees and other items of expense incurred by the Youngs which are not taxable as court costs and not recoverable under § 44-359.[26]

CONCLUSION
For the reasons discussed herein, we reverse and vacate the award of "non taxable costs" in the amount of $5,123.17. We affirm the taxation of court costs in the *785 amount of $2,518.55, but reduce the attorney fee awarded under § 44-359 from $25,000 to $5,000, and affirm as modified.
REVERSED AND VACATED IN PART, AND IN PART AFFIRMED AS MODIFIED.
NOTES
[1] Young v. Midwest Fam. Mut. Ins. Co., 272 Neb. 385, 722 N.W.2d 13 (2006).
[2] Id. at 386, 722 N.W.2d at 15.
[3] See In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007).
[4] Id.; Eicher v. Mid America Fin. Invest. Corp., 270 Neb. 370, 702 N.W.2d 792 (2005).
[5] In re Trust Created by Isvik, 274 Neb. 525, 741 N.W.2d 638 (2007).
[6] Id.
[7] Eicher v. Mid America Fin. Invest. Corp., supra note 4; Destiny 98 TD v. Miodowski, 269 Neb. 427, 693 N.W.2d 278 (2005).
[8] § 44-359.
[9] Dale Electronics, Inc. v. Federal Ins. Co., 205 Neb. 115, 124, 286 N.W.2d 437, 443(1979).
[10] Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).
[11] See 42 U.S.C. § 1988(b) (2000).
[12] Kay v. Ehrler, supra note 10, 499 U.S. at 435, 111 S.Ct. 1435.
[13] Id., 499 U.S. at 436, 111 S.Ct. 1435.
[14] Id.
[15] Id., 499 U.S. at 437, 111 S.Ct. 1435.
[16] See, e.g., Woodside v. School Dist. of Philadelphia, 248 F.3d 129 (3d Cir.2001) (Individuals with Disabilities Education Act); Kooritzky v. Herman, 178 F.3d 1315 (D.C.Cir.1999) (Equal Access to Justice Act); Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir.1998) (Title VII); Burka v. U.S. Dept. of Health and Human Services, 142 F.3d 1286 (D.C.Cir.1998) (Freedom of Information Act); S.E.C. v. Waterhouse, 41 F.3d 805 (2d Cir. 1994) (Equal Access to Justice Act).
[17] See. e.g., Omdahl v. West Iron County Bd. of Educ., 478 Mich. 423, 733 N.W.2d 380 (2007); Kehoe v. Saltarelli, 337 Ill.App.3d 669, 272 Ill.Dec. 66, 786 N.E.2d 605 (2003); Mix v. Tumanjan Development Corp., 102 Cal. App.4th 1318, 126 Cal.Rptr.2d 267 (2002); Bowles v. Pro Indiviso, Inc., 132 Idaho 371, 973 P.2d 142 (1999).
[18] S.N. ex rel. J.N. v. Pittsford Cent. School, 448 F.3d 601 (2d Cir.2006); Woodside v. School Dist. of Philadelphia, supra note 16; Hawkins v. 1115 Legal Service Care, supra note 16.
[19] Omdahl v. West Iron County Bd. of Educ., supra note 17; Mix v. Tumanjan Development Corp., supra note 17.
[20] Anderson v. Wheeler, 214 Or.App. 318, 164 P.3d 1194 (2007); Omdahl v. West Iron County Bd. of Educ., supra note 17; Mix v. Tumanjan Development Corp., supra note 17; Hopkins v. Hopkins, 343 S.C. 301, 540 S.E.2d 454 (2000); Calhoun v. Calhoun, 339 S.C. 96, 529 S.E.2d 14. 339 S.C. 96, 529 S.E.2d 14 (2000); Lisa v. Strom, 183 Ariz. 415, 904 P.2d 1239 (Ariz.App.1995); Trope v. Katz, 11 Cal.4th 274, 902 P.2d 259, 45 Cal.Rptr.2d 241 (1995); Hamer v. Lentz, 132 Ill.2d 49, 138 Ill.Dec. 222, 547 N.E.2d 191 (1989).
[21] Mix v. Tumanjan Development Corp., supra note 17, 102 Cal.App.4th at 1323, 126 Cal. Rptr.2d at 271, citing Trope v. Katz. supra note 20.
[22] See, Koehler v. Farmers Alliance Mut. Ins. Co., 252 Neb. 712, 566 N.W.2d 750 (1997); National Am. Ins. Co. v. Continental Western Ins. Co., 243 Neb. 766, 502 N.W.2d 817 (1993).
[23] Koehler v. Farmers Alliance Mut. Ins. Co., supra note 22.
[24] National Am. Ins. Co. v. Continental Western Ins. Co., supra note 22; Hemenway v. MFA Life Ins. Co., 211 Neb. 193, 318 N.W.2d 70 (1982): Dale Electronics, Inc. v. Federal Ins. Co., supra note 9.
[25] See. Kirchoff v. American Cas. Co., 997 F.2d 401 (8th Cir.1993) (denying plaintiff's request for attorney fees based on bad faith claim after she prevailed on her breach of contract claim); Parker v. Southern Farm Bureau Cas. Ins., 326 Ark. 1073, 935 S.W.2d 556 (1996) (affirming trial court's reduction of awarded attorney fees to account for work performed on bad faith claim).
[26] See Dale Electronics, Inc. v. Federal Ins. Co., supra note 9.